IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ANTHONY ANDERSON,**                      CASE NO. 3:22 CV 1592

    Plaintiff,

    v.                                           JUDGE JAMES R. KNEPP II

**AUSTIN RIDGEWAY, et al.,**

    Defendants.                     **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

*Pro se* Plaintiff Anthony Anderson brings this excessive force and cruel and unusual punishment lawsuit against Correctional Officers Austin Ridgeway, Nicholas Fuller, Joshua Mulinix, Kory Petiniot, Dalton Hendrickson, and Lieutenant Niklos Weirich (Doc. 1). Currently pending before the Court is Defendants' Motion for Summary Judgment (Doc. 20). Plaintiff opposed (Doc. 22), Defendants replied (Doc. 23). Plaintiff filed a sur-reply (Doc. 24) without requesting leave to do so. Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, the Court grants Defendants' Motion for Summary Judgment.

### BACKGROUND

This case arises from an altercation on June 15, 2022, between Plaintiff, an incarcerated inmate housed at the Toledo Correctional Institution (ToCI), and Defendants. Viewed in the light most favorable to Plaintiff, the available evidence demonstrates the following facts.[1]

---

1. Normally, a plaintiff "cannot merely rely on the allegations in their complaint to defeat summary judgment." *Tullis v. UMB Bank, N.A.*, 423 F. App'x 567, 570 (6th Cir. 2011) (citation omitted). Here, however, Plaintiff's Complaint is verified. *See* Doc. 1 at 6. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) (explaining that where a party files a verified complaint, the allegations

In his Complaint, Plaintiff admits to intentionally breaking the sprinkler head off his shower, which caused his cell to flood, after he was denied shower and recreational time. (Doc. 1, at 4). Plaintiff states he did this, so a supervisor would have to come. *Id.* Plaintiff was removed from his cell and transferred to a recreation cage so maintenance could repair the shower. *Id.*

The primary source of evidence comes from Defendants' body cameras and security footage.[2] Body camera footage captures the incident from which Plaintiff's excessive force claim arises. ("Ridgeway Video" and "Petiniot Video"). At the start of the Defendant Ridgeway's body camera video, a prison official squeegees water off Plaintiff's cell floor. (Ridgeway Video, 0:00-0:32). Ridgeway tells the individual squeegeeing the cell to get out. *Id.* at 0:33. A few seconds later, the angle pans to Plaintiff sitting on the floor outside in the central area, with his hands handcuffed behind his back. *Id.* at 0:35. He yells, "I fear for my life," and says to other inmates, "Y'all see this shit?" *Id.* at 0:36. Defendants Weirich and Petiniot tell him to get up, but he refuses and remains seated. *Id.* Plaintiff then states, "Throw me in there". *Id.* at 0:35-0:40. At that point, Defendants Ridgeway, Weirich, and Petiniot lift Plaintiff and carry him into the cell. *Id.* 0:40-0:50. After they place Plaintiff in his cell, Plaintiff repeatedly asks, "Ya'll come get these cuffs?" *Id.* at 0:50-0:55. Defendants Weirich, Fuller, and one other unidentified Defendant enter the cell to

---

contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment" (internal quotation marks omitted)); *see also Williams v. Browman*, 981 F.2d 901, 905 (6th Cir.1992) (concluding that a prisoner's signed complaint with a statement declaring the truth of the allegations under penalty of perjury was sufficient to place controverted facts into issue). Despite Plaintiff not properly requesting leave of court before filing, the Court will consider Plaintiff's sur-reply in keeping up with case law holding courts "construe filings by pro se litigants liberally." *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006).
2. Defendants submitted six body camera videos, from Correctional Officers Austin Ridgeway, Nicholas Fuller, Joshua Mulinix, Kory Petiniot, Dalton Hendrickson, Lieutenant Niklos Weirich, and one video recording from the security cameras at ToCI. *See* Doc. 19 (manual filing).

remove the handcuffs. *Id.* Plaintiff immediately begins to yell and stiffen his body. *Id.* at 1:05. The three Defendants push Plaintiff against the cell wall. *Id.* at 1:10. Defendant Petiniot is standing outside the cell with his body camera recording as Defendant Ridgeway enters the cell. (Petiniot Video, 24:00). Plaintiff then turns and spits directly onto the face of Defendant Fuller. *Id.* at 24:06. Immediately after, Defendant Ridgeway throws what appears to be a punch with his left hand. *Id*. At that point, the two remaining Defendants outside the cell enter, and all six Defendants immediately tackle Plaintiff to the ground. (Ridgeway Video, 1:20). After Defendants restrain Plaintiff on the floor, he is helped to his feet. *Id.* at 1:45. Several Defendants close Plaintiff's cell door, and Defendant Weirich removes his cuffs through a slot in the door. *Id.* at 2:40.

Defendants submit several use of force reports, medical records, and body camera videos. These are all authenticated by a Declaration from the Warden's Assistant, Michael Swartz. *See* Doc. 20-2. Defendants also submit a document stating Plaintiff refused medical attention. (Doc. 20-2, at 13-14).

Plaintiff's verified Complaint states "[a]ll of [Defendants] were punching me in the face and kicking me in the face while I was handcuffed and defenseless." (Doc. 1, at 4). Plaintiff goes on to specifically state Defendant Ridgeway punched and kicked him in the face. *Id.* at 5. Defendant Ridgeway's use of force report states Plaintiff "start[ed] to thrash around and did wrap his leg around [Ridgeway's] leg" and Ridgeway "did give a strike to the offenders hip area and [Plaintiff] did unwrap his leg from [Ridgeway]." (Doc. 20-2, at 8).

Plaintiff claims he suffers from emotional injuries (Doc. 1, at 6), and "damages to [his] mind, body, and soul!". (Doc. 24, at 3).

In his sur-reply, Plaintiff states, "I have in fact exhausted all the remedies I was supposed to. See Aug. 8th T.O.C.I. 10622001946. This is the case # from informal complaint to end of case

3

with Chief Inspector in Columbus." (Doc. 24, at 2). He also claims there are photos documenting his injuries (but these are not attached) and that the video evidence Defendants submit is edited. *Id.*

**STANDARD OF REVIEW**

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials"). While a *pro se* litigant's pleadings are to be construed liberally and have been held to less stringent standards than formal pleadings filed by attorneys, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), pro se litigants must still comply

4

with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## DISCUSSION

Plaintiff brings a § 1983 claim against Defendants for excessive force and cruel and unusual punishment. Defendants move for summary judgment on Plaintiff's claim. They assert: (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff failed to state a valid § 1983 excessive force claim, (3) Plaintiff fails to show personal involvement by any individual Defendant, and *respondeat superior* does not apply, and (4) Defendants are entitled to qualified immunity. Plaintiff claims (1) Defendants used excessive force when they punched and kicked him in the face while he was handcuffed (Doc. 1, at 4), (2) he exhausted his administrative remedies, (3) there is evidence of his injuries, and (4) the video evidence is edited. (Doc. 24, at 2). For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment.

Prison Litigation Reform Act Exhaustion

Defendants contend Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Doc. 20, at 10). In his sur-reply, Plaintiff asserts he properly exhausted his claim. (Doc. 24, at 2).

The PLRA provides:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Non-exhaustion is an affirmative defense under the PLRA; Defendants have the burden of proof. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Napier v. Laurel Cnty.*, 636 F.3d 218, 224–25 (6th Cir.2011). Summary judgment is appropriate only if defendants establish the absence of a "genuine

5

dispute as to any material fact" regarding non-exhaustion. *See* Fed. R. Civ. P. 56(a). "When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)).

To exhaust his administrative remedies, a prisoner must adhere to the institutional grievance policy, including any time limitations. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). The Sixth Circuit requires an inmate to make "affirmative efforts to comply with the administrative procedures," and courts are to analyze whether those "efforts to exhaust were sufficient under the circumstances." *Napier*, 636 F.3d at 224 (internal quotation marks and citation omitted). The Supreme Court has clarified that the "PLRA's exhaustion applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In Ohio, the grievance process prescribed by the Department of Rehabilitation and Correction contains three steps: (1) the filing of an informal complaint, (2) the filing of the notification of the grievance, and (3) the filing of an appeal of the disposition of the grievance to the office of the chief inspector. Ohio Adm. Code § 5120-9-31(J)(1)-(3).

Defendants argue Plaintiff has not demonstrated he exhausted his administrative remedies because he simply asserted in his Complaint that "I told everyone from sergeants to captains to even the warden herself", and Ohio's grievance procedure does not provide for oral complaints. § 5120-9-31. Plaintiff attests in his sur-reply (under penalty of perjury), that he has "in fact exhausted all the remedies [he] was supposed to", citing a case number he asserts is "from informal complaint

6

to end of case with Chief Inspector in Columbus." (Doc. 24, at 2). The Court therefore finds there is an issue of fact regarding exhaustion.

Section 1983

Defendants also contend they are entitled to summary judgment because Plaintiff has not created a genuine issue of material fact regarding his constitutional claim. Plaintiff alleges Defendants used excessive force when they punched and kicked him in the face while he was handcuffed. (Doc. 1, at 4). Defendants assert Plaintiff became combative, refused to let Defendants remove his handcuffs, and spat on Defendant Fuller, resulting in Defendants using force to restore order. (Doc. 20, at 6).

*Personal Involvement*

Section 1983 makes liable "[e]very person" who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or immunities secured by the Constitution[.]" 42 U.S.C. § 1983. "[A] § 1983 plaintiff generally must prove both that a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490 (6th Cir. 2020) (emphasis in original). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, "in the face of [a] motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Pineda*, 977 F.3d at 491 (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018)).

Plaintiff states broadly "[a]ll of [Defendants] were punching me in the face and kicking me in the face while I was handcuffed and defenseless." (Doc. 1, at 4). Despite that fact, Plaintiff

7

specifically states Defendant Ridgeway punched and kicked him in the face. *Id.* at 5. Nevertheless, because the videos depict several officers, the Court turns to Defendants' argument that they are entitled to qualified immunity.

*Qualified Immunity*

Defendants further argue they are entitled to qualified immunity. (Doc. 20, at 10). This doctrine protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an affirmative defense; once a defendant raises it, the burden shifts to the plaintiff to demonstrate: (1) the defendant's acts violated a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). A "clearly established right", for the purpose of determining whether a public official is entitled to qualified immunity, "is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. Amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting

*Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "But not every shove or restraint gives rise to a constitutional violation." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

Analyzing excessive force claims requires both a subjective and an objective inquiry. *Id.* The subjective component looks at the state of mind of prison officials, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Id.* Courts consider the following factors: "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," as well as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.* at 581 (*quoting Whitley*, 475 U.S. at 321). The "core judicial inquiry" whenever a prison official is accused of using excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37).

Starting with the objective component, Plaintiff has not provided evidence showing the level of force inflicted pain on him that was "sufficiently serious." *Cordell*, 759 F.3d at 580. Plaintiff refused medical treatment following the incident, demonstrating he may not have been seriously injured. (Doc. 20-2, at 13). In Plaintiff's sur-reply, he alleges he was injured, and there are images to prove this. (Doc. 24, at 2). But he does not attach any photos.

Moving on to the subjective component, the inquiry asks, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

9

*Wilkins*, 559 U.S. at 37. After Plaintiff was placed back in his cell, he became combative by yelling and stiffening his body when Defendants attempted to remove his handcuffs. (Ridgeway Video, 1:05). As Defendants were trying to restrain Plaintiff, he turned and spit on Defendant Fuller's face. (Doc. 20-2, at 1); *See* Ridgeway Video, 1:20. Defendant Ridgeway's punch came directly after Plaintiff spit on Fuller. (Petiniot Video, 24:07). The question becomes whether the punch (or any other force) was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37. Protecting a fellow officer from an inmate attack constitutes a legitimate good-faith effort to restore discipline and justifies using some force. However, Plaintiff was restrained in handcuffs. It is not entirely clear from the video whether Defendant Ridgeway contacted Plaintiff, but nonetheless, he attempted to strike Plaintiff. Outside of Ridgeway's punch, none of the body camera footage clearly shows any other strikes including punches or kicks to Plaintiff's face contradicting Plaintiff's version of the events. But it does show several officers on the ground with Plaintiff. In Plaintiff's sur-reply, he alleges the videos have been "edited". (Doc. 24, at 2). But, he fails to provide any evidence demonstrating how it was edited. "[W]here, as here, there is 'a videotape capturing the events in question,' the court must 'view[ ] th[ose] facts in the light depicted by the videotape.'" *Green v. Throckmorton*, 681 F.3d 853, 859 (6th Cir. 2012) (second alteration in *Green*) (quoting *Scott*, 550 U.S. at 378–81). The Sixth Circuit has held, "our prior decisions indicate that prison officials may use appropriate force to regain control of an aggressive inmate." *Cordell*, 759 F.3d at 58. Ultimately, the Court need not resolve whether a constitutional violation occurred because Defendants are entitled to qualified immunity on the second prong of the analysis.

      Here, even if Plaintiff were to establish Defendant Ridgeway's strike (or any other specific force applied) was a clear constitutional violation, he certainly has not satisfied his burden to

10

demonstrate it was a clearly established constitutional violation, that is "one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 136 S. Ct. at 308. As to this second prong of the qualified immunity analysis, "[f]or a right to be clearly established, 'existing *precedent* must have placed the statutory or constitutional question beyond debate.'" *Bell v. City of Southfield*, 37 F.4th 362, 368 (6th Cir. 2022) (emphasis in original) (quoting *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021)). Put differently, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). "The plaintiff bears the burden of showing that the right was clearly established" and, to meet such a burden, "must provide on-point caselaw that would bind a panel of [the Sixth Circuit]." *Bell*, 37 F.4th at 367-68.

Plaintiff has failed to cite any published case (or any case law in general) that says Defendant Ridgeway's strike (or any other specific force applied) under the facts at issue here -- a handcuffed but resisting subject who spit in the face of an officer -- was unconstitutional. Therefore, he has not met his burden, and Defendants are entitled to qualified immunity and summary judgment on the Plaintiff's claim.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Summary Judgment (Doc. 20) be, and the same hereby is, GRANTED.

s/ *James R. Knepp II*  
UNITED STATES DISTRICT JUDGE